## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **BERTRUM JEAN, individually and as the** | § | |
| **surviving father of Botham Shem Jean,** | § | |
| **ALLISON A. JEAN, individually and as the** | § | |
| **surviving mother of Botham Shem Jean,** | § | |
| **and ALLISA E. FINDLEY as the** | § | |
| **Administrator of the Estate of Botham** | § | |
| **Shem Jean,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:18-CV-2862-M** |
| | § | |
| **THE CITY OF DALLAS, TEXAS, and** | § | |
| **AMBER GUYGER,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge**[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court are *The Defendant City of Dallas's Motion Pursuant to Rule 12(b)(6) to Dismiss the Plaintiffs' Claims Alleged Against it in the Plaintiffs' Original Complaint, and Brief in Support*, filed November 29, 2018 (doc. 7), and the *Plaintiffs' Motion for Leave to file Sur-Reply to the Defendant City of Dallas's Rule 12(b)(6) Motion to Dismiss*, filed January 18, 2019 (doc. 16). Based on the relevant filings and applicable law, the defendant's motion to dismiss should be **GRANTED**, and the plaintiffs' motion for leave is **DENIED**.

## I. BACKGROUND

Bertrum Jean and Allison A. Jean, individually and as the surviving parents of Botham Shem Jean, and Allisa E. Findley, as the administrator of the estate of Botham Shem Jean (collectively, Plaintiffs), sue the City of Dallas (Defendant) and former Dallas Police Officer Amber Guyger (Officer) under 42 U.S.C. § 1983 for violations of Botham Shem Jean's (Jean) Fourth Amendment

---

[1] By *Standing Order of Reference* filed January 17, 2019 (doc. 15), this case was referred for full case management.

rights.  (docs. 1; 5 at 1-2.)[2]

Plaintiffs allege that after a thirteen hour patrol shift at the Dallas Police Department (DPD) on September 6, 2018, Officer clocked out of work around 9:30 p.m. and drove to the Southside Flats Apartment Complex, where she lived.  (doc. 5 at 4-5.)  Still in her DPD uniform, she arrived at the complex, parked her vehicle on the fourth floor of the parking garage, and walked to apartment number 1478, which did not belong to her.  (*Id*. at 5.)  She put her key into the keyhole, opened the door, and entered the apartment.  (*Id*. at 5-6.)  When she "discovered Jean in a seated position on his sofa," Officer drew her service weapon and began issuing him verbal commands. (*Id*. at 6.)  Plaintiffs allege that "Jean attempted to comply by slowly arising from his seated position," and Officer shot him in the chest "although he was unarmed and not attempting to harm her or any other person."  (*Id*.)  Paramedics and additional law enforcement personnel who arrived on scene after a 9-1-1 call began treating Jean, but he died after being transported to a nearby hospital.  (*Id*. at 7.)

Plaintiffs allege that Officer "failed to conduct an objectively, reasonable assessment of the facts when she chose to use deadly force without properly attempting to use de-escalation tactics to apprehend Jean before discharging her service weapon."  (*Id*. at 7.)  If she had followed proper police procedures and the best police practices, rather than DPD's "shoot first and ask questions later" policy, they claim, she would not have shot Jean.  (*Id*.)  They claim that this is the "second suspicious shooting of an unarmed suspect of color" in which she has been involved in less than five years as a DPD Officer.  (*Id*. at 9.)  They also identify seven other police shootings by different DPD Officers in which unarmed minority individuals were allegedly shot as a result of "the lack of

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

training and official custom[s] or policies of the DPD," noting that the officers involved in at least three of those shootings were not disciplined for their actions. (*Id*. at 17-19.)

Plaintiffs assert that "[a]ll actions that form the basis of this lawsuit were performed pursuant to policies and procedures, customs and practices of Defendant" through the DPD. (*Id*. at 3.) They contend that the DPD's written policy on the use of force "is not the de facto policy of the DPD," and that the policy is actually the one that Officer "employed when she decided to enter Jean's apartment without proper cover and fired shots at Jean without warning and any attempt to de-escalate" the situation. (*Id*. at 10.) DPD "has a pattern, practice, history, and custom of using excessive force against minorities, including approaching them with guns drawn, when there is no imminent threat of bodily harm or other justifiable reason to do so," and "trains its officers to use deadly force even when there exists no immediate threat to themselves or others," they allege. (*Id*.)

Plaintiffs also contend that the DPD's Chief (Chief), Dallas City Council, and Defendant "knew or should have known" that Officer did not receive adequate training in the use of deadly and non-deadly force, proper arrest and confrontation techniques, entering an active crime scene, or proper methods and techniques to control situations similar to the shooting, and that she was not adequately disciplined for her "misuse of force and/or employment of deadly force in the previous officer involved shooting in which she fired her service weapon at an unarmed suspect." (*Id*. at 10-11.) They assert that because she "was ill-trained," she "defaulted to the defective DPD policy" and used "deadly force even when there existed no immediate threat of harm to [herself] or others." (*Id*. at 11.) According to them, her "unlawful and unwarranted acts, lack of training, lack of discipline, and the official customs or policies of the DPD [were] the proximate cause of Jean's death," and they have "sustained substantial damages and pecuniary loss" as a result. (*Id*. at 12.)

3

On November 29, 2018, Defendant moved to dismiss Plaintiffs' claims for failure to state a claim. (doc. 7.) Plaintiffs responded on December 19, 2018, and Defendant filed its reply on January 7, 2019. (docs. 9; 13.) On January 18, 2019, Plaintiffs filed an opposed motion to file a surreply to address what they allege were new arguments in its Defendant's reply, and Defendant responded on January 29, 2019. (docs. 16, 19.)

## II. MOTION FOR LEAVE TO FILE SURREPLY

The purpose of filing a reply "is to give the movant the final opportunity to be heard, and to rebut the nonmovants' response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Info–Power Int'l, Inc. v. Coldwater Tech., Inc.*, No. 3:07-CV-0937-P, 2008 WL 5552245, at *8 (N.D. Tex. Dec. 31, 2008) (citation and internal quotation marks omitted). Accordingly, "a court generally will not consider arguments raised for the first time in a reply brief." *Pennsylvania Gen. Ins. Co. v. Story*, No. 3:03-CV-0330-G, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) (citations omitted). An exception may be made, however, and leave to file a surreply may be granted to allow the "nonmovants . . . a chance to respond" to the movant's newly-asserted theories or evidence. *See id.* Leave to file a surreply is unwarranted where the proposed surreply merely restates the arguments made in the party's initial response. *See, e.g., Williams v. Aviall Serv. Inc.*, 76 F. App'x 534, 535 (5th Cir. 2003) (affirming the denial of a party's motion for leave to file a surreply because the surreply did not include new arguments or evidence); *Berkman v. City of Keene*, No. 3:10-CV-2378-B, 2011 WL 3268214, at *5 (N.D. Tex. July 29, 2011) (denying a party's motion for leave to file a surreply because the proposed surreply involved no new issues).

Here, Defendant's reply brief reiterates the arguments raised in its motion to dismiss, addresses Plaintiffs' response regarding the applicable law for municipal liability claims, and

4

reasserts its arguments for dismissal of those claims.  (*See* docs. 7; 9 at 9-14; 13 at 2-6.)  It also specifically responds to Plaintiffs' arguments that they have provided sufficient allegations to support a finding of municipal liability under § 1983.  (*See* docs. 9 at 15-20; 13 at 4-5.)  These arguments were therefore "raised in [Defendant's] motion and/or were within the scope of the arguments in [Plaintiffs'] response." *Campoamor v. Cengage Learning, Inc.*, No. 3:09-CV-921-M, 2010 WL 11618843, at *1 (N.D. Tex. June 10, 2010); *see Berkman*, 2011 WL 3268214, at *5 (finding that arguments raised in a reply were not new legal issues, but rather responses to arguments raised in the plaintiff's response).  Accordingly, Defendant's alleged new arguments or conflicting statements of law do not create new issues or amount to new evidence, so any surreply to address Defendant's reply brief is unnecessary.  Plaintiffs' motion for leave to file a surreply is **DENIED**. *See Campoamor*, 2010 WL 11618843, at *1 (denying motion for leave to file surreply); *Branton v. City of Dallas*, No. 3:97-CV-0245-P, 1999 WL 765646, at *11 (N.D. Tex. Sept. 23, 1999) (denying motion for leave to file a sur-reply correcting inaccuracies in the reply, finding "that no justification for the filing of materials outside the normal course of briefing has been shown."), *rev'd on other grounds*, *Branton v. City of Dallas*, 272 F.3d 730 (5th Cir. 2001).[3]

### III. RULE 12(b)(6) MOTION

Defendant moves to dismiss all of Plaintiffs' claims against it under Rule 12(b)(6) for failure to state a claim.  (doc. 7 at 1, 8-24.)

### A.   Legal Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Pleadings must show specific, well-pleaded facts, not mere

---

[3] Even if considered, Plaintiffs' proposed surreply would not change the outcome of this recommendation.

conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense").[4]

**B.**     <u>42 U.S.C. § 1983</u>

Defendant argues that Plaintiffs' § 1983 claims against it should be dismissed because they "fail to sufficiently plead the existence of an offending . . . custom having the force" of an official policy, fail to plead facts supporting an inference of deliberate indifference on the part of a policymaker, and fail to plead facts showing that any custom or policy was the moving force behind the alleged constitutional violation. (doc. 7 at 13-24.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable

---

[4] Plaintiffs allege that Defendant's argument "ignores . . . the standards applicable to the pleading of a municipal liability claim," and that based on *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), there is no heightened pleading standard for municipal liability under § 1983. (doc. 9 at 10-11.) In *Twombly* and *Iqbal*, the Supreme Court clarified that the pleading requirement for facts rather than conclusions lies within Fed. R. Civ. P. 8(a), not any heightened pleading standard. The difference between the Rule 8(a) pleading standard and an impermissible heightened pleading standard is in the factual particularity or specificity needed to state a claim. *See Twombly*, 550 U.S. at 569 n.14. A heightened pleading standard requires that a plaintiff "allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Id.* at 570 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). The *Twombly* court did not find that "the allegations in the complaint were insufficiently "particular[ized]"; rather, the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Id.* at 569 n.14. Requiring allegation of facts sufficient to support a claim for municipal liability does not impose an impermissible heightened pleading requirement.

under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her

constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978); *Jones v. City*

*of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Bd.*

*of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). It is well-settled that a municipality cannot

be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d

567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth

Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an

official policy; and a violation of constitutional rights whose 'moving force' is the policy or

custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536,

541–42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005).[5]

### 1.      Official Policy or Custom

Defendant contends that Plaintiff has failed to plead facts to support the existence of an

official custom or policy. (doc. 7 at 14-19.)

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and
promulgated by the municipality's lawmaking officers or by an official to whom the
lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although
not authorized by officially adopted and promulgated policy, is so common and well
settled as to constitute a custom that fairly represents municipal policy. Actual or
constructive knowledge of such custom must be attributable to the governing body
of the municipality or to an official to whom that body had delegated policy-making
authority. Actions of officers or employees of a municipality do not render the
municipality liable under § 1983 unless they execute official policy as above defined.

---

[5] Plaintiffs identify the Chief, Dallas City Council and City Manager as policymakers, and Defendant does not
challenge whether they have sufficiently identified a policymaker. (*See* docs. 5 at 2; 7 at 13-14.) This element is
therefore not at issue.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).  Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious consequences that constitutional violations would result.  *Piotrowski*, 237 F.3d at 579–80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849–50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010).  "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."  *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (finding insufficient an allegation that "[the officer] was acting in compliance with the municipality's customs, practices or procedures") (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted).

### a.    *Failure to Train, Supervise, or Discipline*[6]

Defendant argues that Plaintiffs' claims for failure to train, supervise, and discipline should

---

[6] Although Plaintiffs separately assert claims for failure to train and failure to supervise or discipline, (doc. 5 at 15-24), the elements required to prove a claim under either theory are the same.  *E.G. v. Bond*, No. 1:16-CV-068-C, 2017 WL 129019, at *3 (N.D. Tex. Jan. 13, 2017) (citing cases).  These claims are therefore considered together.

be dismissed because they fail "to plead adequately a custom having the force of official [c]ity policy sufficient to support § 1983 liability," and they offer no factual allegations to support their claims.  (doc. 7 at 14-19.)

"The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement."  *Peterson*, 588 F.3d at 849 (citing *Brown v. Bryan Co.*, 219 F.3d 450, 458 (5th Cir. 2000), *cert. denied*, 131 S. Ct. 66 (2010)).  To establish municipal liability based on a failure to train in the Fifth Circuit, the plaintiff must show "'(1) inadequate training procedures; (2) that inadequate training caused the . . . officers to [use excessive force]; and (3) the deliberate indifference of municipal policymakers."  *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (alteration in original) (quoting *Pineda*, 291 F.3d at 332); *see World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) ("The failure to train must reflect a 'deliberate' or 'conscious' choice by the municipality." (internal quotations omitted)).  Additionally, "it must have been obvious that 'the highly predictable consequence of not training' [the] officers was that they 'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk.'"  *Peterson*, 588 F.3d at 849 (quoting *Brown*, 219 F.3d at 461).[7]

Under Fifth Circuit law, a claim that the failure to train caused a constitutional violation "requires that a plaintiff demonstrate at least a pattern of similar violations arising from training that

---

[7] Courts recognize that even officers who are adequately trained, supervised, and disciplined "'occasionally make mistakes,'" and "'the fact that they do says little about the training,'" supervision, or disciplinary policies and procedures of a city.  *E.G. by Gonzalez v. Bond*, No. 1:16-CV-0068-BL 2017 WL 3493124, at *5 (quoting *City of Canton*, 489 U.S. at 391), *adopted by* 2017 WL 3491853 (N.D. Tex. Aug. 14, 2017).  Rather, the "law requires that the officer's shortcomings resulted from the faulty training program (or faulty supervision or discipline procedures) to impose municipal liability for an alleged failure to act."  *Id.*

is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003); *see Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 956 (N.D. Tex. 2014) (quoting *Kitchen v. Dallas Cty.*, 759 F.3d 468, 484 (5th Cir. 2014)) (stating that the most common approach to asserting a failure to train claim is to demonstrate a pattern of similar violations that "were 'fairly similar to what ultimately transpired' when the plaintiff's own constitutional rights were violated."). A pattern of similar prior incidents "requires similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'" *Fuentes v. Nueces Cty., Tex.*, 689 F. App'x 775, 778 (5th Cir. 2017) (quoting *Peterson*, 588 F.3d at 851 (alteration in original)). "In addition to similarity and specificity, a pattern must be comprised of 'sufficiently numerous prior incidents' rather than merely isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)); *see Peterson*, 588 F.3d at 851.

Here, Plaintiffs allege that Defendant inadequately trained its officers in the use of appropriate detention and seizure procedures, use of excessive and/or deadly force, proper use of less deadly means, proper use of cover and the pursuit of a suspect, and use of de-escalation tactics. (doc. 5 at 11, 16.) They further allege that it failed "to provide proper training, adequate supervision or discipline in dealing with individuals such as Jean," "specifically during what is perceived as an active crime scene . . . ." (doc. 5 at 15-16.) According to Plaintiffs, there are "longstanding records of not providing DPD officers with adequate training . . . to prevent instances of excessive and deadly force," and "[t]he actual practice or custom of the DPD regarding the use of deadly force is to 'shoot first and ask questions later.'" (*Id.* at 17.) They contend that Officer's lack of training led to her use of excessive and deadly force against Jean, and that Defendant and the DPD "failed to

adequately supervise or discipline Officer . . . despite her unlawful conduct." (*Id.*)  Plaintiffs point

to seven other police shootings in which unarmed minority individuals were allegedly shot as a

result of "the lack of training and official custom[s] or policies of the DPD," noting that the officers

involved in at least three of those shootings were not disciplined for their actions.  (*Id*. at 17-19.)

They generally assert that these other shootings are similar to Jean's shooting because they involved

unarmed minority individuals.  (docs. 5 at 17-19; 9 at 18, 22-23.)

In several of those cases, on-duty officers were responding to emergency or suspicious

person calls and/or engaged in pursuit and altercations with the individuals immediately before the

shooting. *See Flanagan v. City of Dallas, Tex.*, 762 F. App'x 187, 188 (5th Cir. 2019) (per curium)

(individual shot by officer after foot pursuit and altercation); *Dawes v. City of Dallas*, No. 3:17-CV-

01424-S-BK (N.D. Tex. June 27, 2017) (officers responding to suspicious person call shot individual

in stolen vehicle as it reversed); *Davis v. City of Dallas*, No. 3:16-CV-2548-L (N.D. Tex. June 6,

2017) (officers responding to emergency call tased and then shot and killed mentally ill individual

without any verbal warning); *Harper v. City of Dallas*, No. 3:14-CV-02647-P, 2015 WL 13729793,

at *1 (N.D. Tex. Aug. 13, 2015) (officers responding to emergency call engaged in foot pursuit and

altercation with individual before fatally shooting him); *Bennett v. Spencer*, No. 3:14-CV-0402-N,

2015 WL 13664569, at *3–4 (N.D. Tex. Mar. 11, 2015) (officers responding to emergency call shot

individual holding a knife).  In another case, officers "looking for criminal activity" had an exchange

with the plaintiff before he entered his apartment, and they subsequently fired multiple shots at the

apartment after he opened the door holding a flashlight with a handle resembling a pistol grip. *Blair

v. City of Dallas*, 666 F. App'x 337, 338–39 (5th Cir. 2016) (per curium).  The last case involved

an individual who was shot in broad daylight while his hands were in the air. *Walker v. Wilburn*,

No. 3:13-CV-4896-D, 2013 WL 6728070, at *1 (N.D. Tex. Dec. 20, 2013).

Although the cases cited by Plaintiffs and Defendant involved shootings of unarmed minority individuals by police officers, they are not "fairly similar" to Jean's shooting inside his own home. None of these cases involved an off-duty officer approaching what he or she believed to be a burglary taking place in his or her own home at the time of the shooting.  (*See* doc. 5 at 5-7.) Because these other incidents relied upon by Plaintiffs "are distinguishable from the instant case and do not establish a pattern," they are insufficient to show a custom or policy supporting municipal liability under the theories of failure to train, supervise, or discipline.  *See Lopez-Rodriguez v. City of Levelland, Tex.*, 100 F. App'x 272, 274 (5th Cir. 2004); *see also Fuentes*, 689 F. App'x at 778.[8]

In addition, as noted, the Fifth Circuit also requires that a pattern of violations be "'sufficiently numerous.'"  *Fuentes*, 689 F. App'x at 778 (quoting *McConney*, 863 F.2d at 1184); *see Peterson*, 588 F.3d at 851.  "Although there is no rigid rule regarding numerosity, [the Fifth Circuit has found] that 27 prior incidents of excessive force over a three-year period . . . and 11 incidents offering 'unequivocal evidence' of unconstitutional searches over a three-year period . . . were not sufficiently numerous to constitute a pattern."  *Fuentes*, 689 F. App'x at 778 (internal citations omitted); *compare Peterson*, 588 F.3d at 850–52 (finding 27 incidents over three years insufficient), *and Pineda*, 291 F.3d at 329 (finding 11 incidents over three years insufficient), *with Harper*, 2015 WL 13729793, at *2–3 (determining that 14 shootings in the *same year* as the shooting at issue, along with other facts about DPD shootings, were sufficient to "support a

---

[8]Plaintiffs also allege that Officer was previously involved in a different "suspicious shooting of an unarmed suspect of color," but she was not required to undergo counseling or training following the first shooting, and she was not adequately disciplined for her involvement in that shooting.  (*Id*. at 9-10.)  They do not allege facts showing that the prior incident was similar to the shooting at issue here, however.  (*Id*.; doc. 9 at 8-9.)  Rather, they allege that the prior shooting involved a traffic stop during which a "person of color" allegedly attempted to take Officer's taser before the shooting occurred.  (*See* doc. 9 at 8-9.)

reasonable inference that a persistent, widespread practice of excessive force" existed), *and Flanagan*, 48 F. Supp. 3d at 954 (finding that "[w]hile it was a close call," 12 shootings in the *same year* as the shooting at issue, along with other facts regarding prior shootings, were sufficient to infer a "persistent, widespread practice by DPD officers" at the motion to dismiss stage).  Even assuming for purposes of this motion only that the seven prior incidents Plaintiffs cited are similar enough to reasonably infer a pattern sufficient to establish a custom or policy of insufficient training, supervision, or discipline by DPD because they involved unarmed minority individuals shot by police officers, the incidents occurred over a four-year period between 2012 and 2017.  Accordingly, they are not "sufficiently numerous" to demonstrate a pattern sufficient to support such a custom or policy.[9]  *See Fuentes*, 689 F. App'x at 778.

### b.     Single Incident Exception

Plaintiffs respond that even where a pattern or custom does not exist, "a single incident of a violation may support liability."  (doc. 9 at 20 (citing cases).)

Under the "extremely narrow" single incident exception, "§ 1983 liability can attach for a single decision not to train[, supervise, or discipline] an individual officer even where there has been no pattern of previous constitutional violations" in "extreme circumstances."  *Brown*, 219 F.3d at 459; *Khansari v. City of Houston*, No. H-13-2722, 2015 WL 6550832, at *16 (S.D. Tex. Oct. 28, 2015) (citing *Brown*, 219 F.3d at 452–48); *see Hobart v. Estrada*, 582 F. App'x 348, 358 (5th Cir. 2014).  To show liability, "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the

---

[9] Notably, excessive force was found not to have been used in two of the incidents relied upon by Plaintiffs. *See Blair v. City of Dallas*, 666 F. App'x 337, 338–39 (5th Cir. 2016) (affirming judgment in favor of defendants); *Flanagan v. City of Dallas*, No. 3:13-CV-04231-M, 2018 WL 1046624, at *1 (N.D. Tex. Feb. 23, 2018) (stating that the jury found that the officer did not use excessive force against the plaintiff).

moving force behind the constitutional violation." *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).   Fifth Circuit "caselaw suggests, however, that the exception is generally reserved for those cases in which the government actor was provided no training whatsoever." *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018); *see McClendon v. City of Columbia*, 258 F.3d 432, 442–43 (5th Cir. 2001), *vacated for reh'g en banc*, 285 F.3d 1078 (5th Cir. 2002), *decision on reh'g en banc*, 305 F.3d 314 (5th Cir. 2002) (noting "there is a difference between a complete failure to train . . . and a failure to train in one limited area.").

Citing *Grandstaff v. Borger*, 767 F.2d 161, 171 (5th Cir. 1985), Plaintiffs assert that Officer's conduct under the "shoot first, ask questions later" policy, and the conduct of the other officers they referred to, are "so egregious that the single-incident exception applies."  (doc. 9 at 24-25.)  In *Grandstaff*, six police officers pursuing a person suspected of a minor traffic violation "mistook an innocent bystander, who was driving a slow-moving truck, for the suspect and 'poured their gunfire at the truck' 'without awaiting any hostile act or sound,' ultimately killing the bystander." *Fuentes*, 689 F. App'x at 779 (quoting *Grandstaff*, 767 F.2d at 165, 168).  The Fifth Circuit upheld the jury's finding that the city was liable "even though there was no evidence of prior similar incidents by its police force, because the conduct of both the officers during the incident and the [c]ity policymakers in the wake of the incident . . . was sufficient" to "show an official policy of condoning such abuses." *Id*. (citing *Grandstaff*, 767 F.2d at 171–72).

"Unlike *Grandstaff*, this case does not involve the collective conduct of many individuals and multiple bad acts;" Plaintiffs allege the use of excessive force by one officer. *See id.*  They also allege that Officer's training was inadequate, not that she "was provided no training whatsoever," as has been generally required for cases involving the single incident exception. *See Pena*, 879 F.3d

at 624; *McClendon*, 258 F.3d at 442–43; *see also Brown*, 219 F.3d at 453–54, 462 (finding that the single incident exception applied where a deputy received *no training* from the police department). Their allegations are therefore insufficient to "satisfy the exacting test for the narrow single-incident exception." *Pena*, 879 F.3d at 624.

Based on Fifth Circuit precedent, Plaintiffs have failed to plead sufficient facts from which it can be inferred that there is a persistent, widespread practice of DPD officers using excessive force that would rise to the level of a custom having the force of an official city policy, and their allegations are insufficient to support municipal liability under the single-incident exception. Accordingly, they fail to state a claim for failure to train, supervise, or discipline against Defendant. *See Pena*, 879 F.3d at 624; *Peterson*, 588 F.3d at 849 (quoting *Brown*, 219 F.3d at 461).

### 2.    Moving Force

Defendant argues that even if Plaintiffs have alleged sufficient facts of an official policy or custom, they also "fail to sufficiently plead facts that permit a reasonable inference of legal causation." (doc. 7 at 21-23.)

Plaintiffs must adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). "In other words, a plaintiff must show direct causation." *Peterson*, 588 F.3d at 848 (citing *Piotrowski*, 237 F.3d at 580). A "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Brown*, 520 U.S. at 404) (internal quotation marks omitted); *see also Johnson*, 379 F.3d at 310 (quoting *Fraire*, 957 F.2d at 1281) (noting "[t]his connection must be more than a mere

16

'but for' coupling between cause and effect").  A plaintiff therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Valle*, 613 F.3d at 542  (quoting *Brown*, 520 U.S. at 411) (internal quotation marks omitted); *see also Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407) ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result.").  Simple or even heightened negligence is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (citing *Brown*, 520 U.S. at 407).

Here, Plaintiffs allege that Officer's "unlawful and unwarranted acts, lack of training, lack of discipline and the official customs and policies of the DPD [were] the proximate cause of Jean's death."  (doc. 5 at 12, 23.)  They claim that Defendant's "failure to properly train, supervise and discipline its officers was the proximate cause of the violation of Jean's constitutional rights," and that these failures were "therefore the moving force behind Plaintiffs' damages."  (*Id.* at 24-25.)

In *Spiller,* the Fifth Circuit found assertions that several policies "led to" unspecified "unconstitutional arrests and confinements," and that there was a departmental policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest," were too vague and conclusory to support the causation element for municipal liability under *Monell*.  130 F.3d at 167.  Under *Spiller*, Plaintiffs' assertions that Officer's actions resulted from a lack of training, supervision, and/or discipline are too vague and conclusory to support the causation element for municipal liability. *See id.*  They are not sufficient to show "how the [alleged] customs and practices . . . were a 'moving force' behind the [alleged] specific constitutional violations made the basis of this suit . . .". *Bragg v. Safeek*, No. 3-09-CV-1931-N-BD, 2010 WL 5140670, at *2

(N.D. Tex. Dec. 13, 2010).   To the extent that Plaintiffs allege other action on the part of Defendant's policymakers in support of causation, the conclusory statements and formulaic recitations of the elements in the complaint likewise do not suffice to state a claim under *Spiller*. (*See* doc. 5 at 24-25 (stating that policymakers were "deliberately indifferent to the need to [train,] supervise and/or discipline its officers and/or employees adequately," and their failures "proximately caused the deprivation of Jean's constitutional rights.").)   Accordingly, Plaintiffs have also failed to allege sufficient facts to support an inference of causation.

Because Plaintiffs have failed to plead sufficient facts to support a finding of municipal liability under § 1983, their claims for failure to train, supervise, and/or discipline against Defendant should be dismissed for failure to state a claim.

## IV. RECOMMENDATION

Defendant's motion should be **GRANTED**, and Plaintiffs' claims against it should be **DISMISSED with prejudice**.[10]

**SO RECOMMENDED** on this 12th day of August, 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[10] Plaintiffs' response "ask[s] that they be granted leave to amend any defects in their complaint" if their allegations are found deficient.  (doc. 9 at 31.)  A party is not entitled to remedy a pleading deficiency simply by seeking leave to amend in response to a motion to dismiss, however.  *Spiller*, 130 F.3d at 167.  When a party opposes a motion to dismiss on its merits while also asking for leave to amend should dismissal be deemed proper, the party "may not avoid the implications" of his choices.  *Id.*  In addition, Plaintiffs have not sought leave to amend in accordance with LR 15.1, and their request may be denied on this basis.  *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 798 (N.D. Tex. 2005) (accepting recommendation).  The request to amend is denied without prejudice to filing a compliant motion.

18

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE