**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **BERTRUM JEAN, Individually and as** | § | |
| **the surviving father of BOTHAM** | § | |
| **SHEM JEAN, ALLISON A. JEAN,** | § | |
| **Individually and as the surviving** | § | |
| **mother of BOTHAM SHEM JEAN, and** | § | |
| **ALLISA E. FINDLEY as the** | § | |
| **Administrator of the Estate of** | § | **CIVIL ACTION NO.** |
| **BOTHAM SHEM JEAN,** | § | |
| **Plaintiffs,** | § | **3:18-CV-2862** |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **AMBER GUYGER,** | § | |
| **Defendant.** | § | |

<u>**PLAINTIFFS' MOTIONS *IN LIMINE***</u>

NOW COME Plaintiffs, Bertram Jean, Allison Jean, and Allisa Findley as Administrator of the Estate of Botham Jean, by and through their counsel of record, Romanucci & Blandin, LLC, and respectfully moves this Honorable Court *in limine*. In support thereof, Plaintiff states as follows:

<u>**MOTION *IN LIMINE* NO. 1: To Admit Evidence Through Previously Sworn Affidavits**</u>

Plaintiffs move this Honorable Court *in limine* to admit certain documents, videos, and audio into evidence based on previously sworn affidavits. Specifically, Plaintiffs request the discussed exhibits be admitted with the foundation and authenticity provided via affidavit of the recordkeeper or person with most knowledge of the document. Plaintiffs seek to do so in the interest of promoting judicial efficiency while balancing the evidentiary requirements of this matter.

To submit relevant documents into evidence, the proponent must generally satisfy the requirements of authenticity and prove that the documents do not constitute inadmissible hearsay. As detailed herein, the materials Plaintiff seeks to introduce into evidence meet all relevant requirements. Under Federal Rule of Evidence 901(a), to authenticate or identify an item of evidence, the proponent "must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

Only a *prima facie* showing of authenticity is necessary to support admissibility. *United States v. Tank,* 200 F.3d 627, 630 (9th Cir. 2000). This showing needs only to be enough "so that a reasonable juror could find in favor of authenticity or identification." *Id.* (citing *U.S. v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985). Once the proponent of a document makes their showing of authenticity, "the question of authenticity [goes] before the finder of fact," and ***the burden shifts to the opponent of the document to rebut the authentication***. *Alexander Dawson, Inc. v. N.L.R.B.*, 586 F.2d 1300, fn. 2 (9th Cir. 1978) (emphasis added). Importantly, the standards of making a *prima facie* showing of authenticity are relaxed. *In re Japanese Elec. Products Antitrust Litig.*, 723 F.2d 238, 285 (3d Cir. 1983), rev'd on other grounds sub nom. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). (As opposed to questions of admissibility, for questions of authentication "[l]ess is required in establishing that evidence is what its proponent claims it to be.").[1]

F.R.E. 901(b) lists ten non-exclusive illustrative methods by which a document may be authenticated. However, this list comprises examples and is "not a complete list" F.R.E. 901(b).

---

[1] *See also Matter of Bobbie Boggs*, 819 F.2d 574, 581 (5th Cir. 1987) ("Rule 901 . . . suggests that the authentication requirement may be met in many ways"); 5 Weinstein's Evidence ¶ 901(b)(1)[01], at pp. 901-932 ("Absolute precision and certainty is not required."); 2 McCormick on Evidence, § 227, p. 54 (4th ed. 1992) ("the authenticity of a writing . . . is not a question of the application of a technical rule of evidence. . .. Thus if a prima facie showing is made, the writing . . . comes in").

In that regard, under F.R.E. 903, "a subscribing witness's testimony is necessary to authenticate a writing only if required by the law of the jurisdiction that governs its validity." Authentication can also arise from the general characteristics and circumstances of the item, such as "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." F.R.E. 901(b)(4).

When a document is "self-authenticating" under Rule 902, no extrinsic evidence of authenticity is required to be admitted. FRE 902. Examples of self-authenticating evidence includes domestic public documents, with or without seal; publications purporting to be issued by a public authority; trade inscriptions indicating ownership, control, or origin; and certified records of regularly conducted activity. FRE 902. This includes business records for which FRE 902(11) expressly authorize self-authentication by written declaration of its custodian or other qualified person.

Several of the records and materials Plaintiff seeks to admit into evidence were entered into the criminal trial with affidavits and testimony. Said affidavits were exchanged as discoverable materials during the pendency of this civil action. If said materials are used as exhibit here and via affidavit, Plaintiff will be able to cut some live witnesses whose testimony was primarily required for the foundation and authenticity of evidence.

For the Court's convenience, Plaintiffs provide explanations for the authentication, and admissibility for some of the documents they intend to offer at trial.

- Plaintiff's Trial Exhibit 13 is the Audio of the 911 call placed by Amber Guyger on the date of the incident. Plaintiff's Trial Exhibit 14 is the Transcript of said call. Plaintiff's Trial Exhibit 15 is the Business Records Affidavit by the records custodian Karla Rivera, attached hereto as Ex. 1, stating that said records were kept in the regular course of business

at the Dallas Police Department and thus authenticating the 911 call and transcript under FRE 901(11).

- Plaintiffs Trial Exhibits include the Body Worn Cameras of Officer Lee (Plaintiffs' Trial Exhibit 22), Officer Nguyen (Plaintiffs' Trial Exhibit 21), Officer Dugas (Plaintiffs' Trial Exhibit 19), and another Officer arriving immediately on scene (Plaintiffs' Trial Exhibit 20). Plaintiff's Trial Exhibit 18 is the Business Records Affidavit by the records custodian, Stephen Williams of the Dallas Police Department, in which he states that the digital records were made in the regular course of business and maintained, thus authenticating the videos under FRE 901 as business records, laying the foundation for said videos, and indicating that the videos are exact duplicates of the originals. Said Affidavit attached hereto as Ex. 2.

- Plaintiff's Trial Exhibit 24 is the Surveillance Footage of the Garage of the apartment complex in the subject incident. Plaintiff's Trial Exhibit 23 is the Business Records Affidavit by the records custodian David Scharfenberg, attached hereto as Ex. 3, stating that said records were kept in the regular course of business at the Southside Flats Apartment and thus authenticating the video under FRE 901(11), laying the foundation for said video, and indicating that it is an exact duplicate of the original.

- Plaintiff's Trial Exhibit 11 is the Lease of Botham Jean to his Southside Flats Apartment, alongside the Business Records Affidavit of records custodian David Scharfenberg, which is attached hereto as Ex. 4, stating that said records were kept in the regular course of business at the Southside Flats Apartment and thus authenticating the video under FRE 901(11), laying the foundation, and indicating that it is an exact duplicate of the original.

- Plaintiff's Trial Exhibit 60 is the Run Report of the Dallas Fire Department which provided Emergency medical treatment to Mr. Jean. Also included in the exhibit is the Business Records Affidavit completed by the records Custodian, Robert Holloway. Said affidavit is attached hereto as Ex. 5, thus authenticating the document under FRE 901(11).

WHEREFORE, Plaintiffs respectfully move this Honorable Court *in limine* to admit the described exhibits through affidavit of the record custodian.

### MOTION *IN LIMINE* NO. 2: To Admit Evidence of Prior Incident Involving Discharge of Firearm.

Pursuant to Federal Rules of Evidence 404(b)(2), Plaintiffs move the Court *in limine* to admit testimony or evidence relating to an officer-involved shooting incident that took place prior to the killing of Mr. Jean. That incident is specifically referenced in the deposition testimony of Dallas Police Department Detective Eduardo Ibarra, who indicated that Defendant shot a civilian in an interaction earlier, in the year before she killed Mr. Jean. *See* Ex. 6, at 17:20-19:10.

Under Rule 404(b), "evidence of prior bad acts is admissible for . . . proof of intent, plan, motive, knowledge, and absence of mistake or accident." Fed. R. Civ. P. 404(b)(2). Here, the testimony regarding this specific instance is relevant as it involves Defendant's prior officer-involved shooting, which directly relates to the issue before this court. This evidence tends to show that there was no clear absence of mistake or accident when roughly a year later she shot and killed Mr. Jean. Extrinsic evidence "is not inadmissible as long as its probative value is not "substantially outweighed by its inherent prejudice." *See United States v. Beechum*, 582 F.2d 898, 910 (5th Cir. 1978); *United States v. Hagen*, No. 3:19-CR-0146-B, 2021 WL 3793758, at *8 (N.D. Tex. Aug. 26, 2021). Given that Defendant's prior bad acts are relevant and probative of the matter at hand, these acts are admissible pursuant to Federal Rules of Evidence 403 and 404.

5

WHEREFORE, Plaintiffs move the Court to admit *in limine* the above instance of Defendants' prior acts relevant to the shooting death of Mr. Jean, as they are relevant under Federal Rules of Evidence 403 and are admissible under Federal Rules of Evidence 404(b)(2) showing Defendant's lack of accident or mistake.

### MOTION *IN LIMINE* NO. 3: To Allow Testimony of Plaintiff's Experts via Zoom

Plaintiffs move the Court *in limine* to allow the expert testimony relevant to Plaintiffs' case to be administered via Zoom. In support of said motion, Plaintiffs state as follows:

The decision whether to allow remote testimony pursuant to Rule 43(a) lies within the district court's discretion. *Shenzen Synergy Digital Co. v. Mingtel, Inc.*, No. 4:19-CV-00216, 2021 WL 6072565, at *2 (E.D. Tex. Dec. 23, 2021). "Like other evidentiary rulings, a district court's decision whether to allow remote testimony pursuant to Rule 43(a) is reviewed for abuse of discretion." *Id.* (quotation omitted). Indeed, Rule 43(a) "is by its own terms permissive and not mandatory." *Id. Accord Est. of Melvin by & through Melvin v. City of Colorado Springs, Colorado*, No. 20-CV-00991-CMA-MDB, 2024 WL 2958950, at *7 (D. Colo. June 12, 2024) (Citing Rule 43(a) for the proposition that "when in-person testimony proves impracticable, the Rules allow for remote testimony"). Plaintiffs plan to present the testimony of four experts who will give opinion testimony relevant to the Plaintiffs' claims who live outside of Texas. Plaintiff intends to call these 4 experts pursuant to Rule 26(a)(2)(B), whom Plaintiff will be required to pay hundreds of dollars per hour for travel time; as well as 6 experts called pursuant to Rule 26(a)(2)(C), who are physicians and/or therapists who would be required to expend valuable time traveling to testify, including one that lives out of country and two who live out of state. Plaintiffs respectfully submit that in the present circumstances, testimony of these experts can be

presented equally effectively via remote video, reducing the burden on both the parties and the witnesses in this case.

WHEREFORE, Plaintiffs move this Honorable Court to allow *in limine*, expert testimony relevant to their claims in this action to occur via Zoom.


### MOTION *IN LIMINE* NO. 4: To Excuse Prescence of Local Counsel

Plaintiff moves this Court for an Order *in limine* excusing local counsel, from being in attendance for the entirety of the trial. Pursuant Rule 83.10 of the Local Civil Rules of the United States District Court for the Northern District of Texas, Plaintiffs attorneys were granted admission *pro hac vice* under attorney Daryl K. Washington (Texas Bar No. 24013714), of Washington Law Firm, P.C., 325 N. St. Paul, Suite 3950, Dallas, Texas 75201. Mr. Washington has a trial that has been unavoidably scheduled during the Pretrial Conference Hearing and Jury Selection dates in this matter, with an unknown end date that may overlap with the further proceedings in this matter.

Pursuant to Local Rule 83.10 an attorney may seek leave from the Court to proceed without local counsel. Because the Defendant has waived her presence at trial, the trial in this case is unlikely to present complexity requiring participation of local counsel, and the undersigned counsel have familiarized themselves with the local rules in any event Plaintiffs seek this leave if Mr. Washington is unable to attend. Because they are admitted *pro hac vice*, moreover, the undersigned counsel are subject to the Court's oversight in all matters involving the conduct of the trial. In the alternative, Plaintiffs' undersigned counsel seeks leave to have her *pro hac* sponsor substituted as soon as feasibly possible.

WHEREFORE, Plaintiffs move this Court to enter an Order *in limine* allowing local counsel to be absent from the court room during proceedings in the upcoming trial and for any further relief this Court deems appropriate and just.

**MOTION *IN LIMINE* NO. 5: To Allow Designation and Reading of Depositions**

The Plaintiff respectfully moves this Honorable Court *in limine* to deem certain witnesses'

depositions admissible in lieu of live testimony at trial in accordance with Rule 32(a)(1) of the

Federal Rules of Civil Procedure.

Rule 32(a)(1) of the Federal Rules of Civil Procedure sets forth the following standard to use

depositions at trial in lieu of live testimony:

> At a hearing or trial, all or part of a deposition may be used against a party on
> these conditions: (A) the party was present or represented at the taking of the
> deposition or had reasonable notice of it; (B) it is used to the extent it would be
> admissible under the Federal Rules of Evidence if the deponent were present and
> testifying; and (C) the use is allowed by Rule 32(a)(2) through (8).

Discovery rules 26 to 37 of the Federal Rules of Civil Procedure "should be construed to

secure the just, speedy and inexpensive determination of actions." *Babcock & Wilcox Co. v. N.*

*Carolina Pulp Co.*, 25 F. Supp. 596, 597 (D. Del. 1938). "The admission of testimony in a

deposition is within the sound discretion of the trial court." *Reeg v. Shaughnessy*, 570 F.2d 309,

316–17 (10th Cir. 1978) (citing Sims *Consolidated, Ltd. v. Irrigation and Power Equipment,*

*Inc.,* 518 F.2d 413 (10th Cir. 1975)).

Here, Plaintiff is seeking to use nine depositions of individuals who were represented at the

time of deposition by the City of Dallas and its attorneys, thus, the parties were present and

represented at the taking of the deposition. No other portion of Rule 32 would bar the use of said

depositions. Approximately nine (9) depositions were conducted that concern the testimony of

the following witnesses or deponents: (1) Dallas Police Department Officer Tu Minh Nguyen;

(2) Lieutenant Michael J. Mata of the Dallas Police Department; (3) Dallas Police Department

Officer Ryan Barnett; (4) Dallas Police Department Detective Eduardo Ibarra; (5) Dallas Police

Department Sargent Brenna Valentine; (6) Dallas Police Department crime scene investigator

Julia Wyland; (7) Dallas Police Department Investigator Carmen Fletcher; (8) Dallas Police Department Investigator Robyn Carr Williams; and (9) Dallas Police Department Dispatcher Karla Rivera. See Plaintiff's Deposition Designations and Deposition Transcripts, ECF 230, ECF 230-1 through ECF 230-9.

FRCP 32 allows the use of the deposition of an adversary as part of substantive proof, regardless of the adversary's availability to testify at trial. *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 308 (5th Cir. 1978). All the deponents offered by Plaintiff were agents of the City of Dallas pertaining to their involvement in the case.

In addition, FRCP 32(a)(4) allows for the use of a deposition in lieu of live testimony where "on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used." Fed. R. Civ. P. 32(a)(4)(E). Here, such exceptional circumstances justify admission. On September 24, 2024, Defendant Guyger waived her right to be present at the pretrial conference, jury selection, and trial. To ensure she was fully informed, Defendant Guyger was sent a copy of these depositions and designations for her review and response. To date, Plaintiffs have not received any response or objection to said designations. In addition, Plaintiff seeks to conserve the Court's resources in conducting a trial as expeditiously as possible, while balancing the necessary evidence that must be demonstrated to the jury. In the interest of justice, to avoid a waste of judicial resources, and in light of the exceptional circumstances involved herein plaintiff seeks to read-in testimony where the Defendants have no objection and the individuals were represented at the time of their deposition.

WHEREFORE, Plaintiffs, through their counsel of record, move this Honorable Court to exercise its discretion *in limine*, to admit the admission of these witnesses' depositions in lieu of

each of their live testimony at any time during the course of the trial of this action and for any

further relief that this Honorable Court deems appropriate and just.

## MOTION *IN LIMINE* NO. 6: To Permit Admission of Defendant Amber Guyger's Trial Court Statements.

Plaintiffs respectfully move this Honorable Court *in limine* to admit statements made by

Defendant in the preceding Criminal Trial as enabled by the Federal Rule of Evidence 801. In

support of said motion, Plaintiffs state as follows:

Defendant Guyger's relevant statements made during her criminal trial are admissible

under the Federal Rule of Evidence 801(d)(2)(A), because they are statements made by and

offered against an opposing party and as such do not constitute hearsay.  *See* Fed. R. Evid.

802(d)(2)(A), *Hannah Moody v. Walmart, Inc.* No. 3:19-CV-537-DPJ-FKB, 2022 WL 602431,

at *4 (S.D. Miss. Feb. 28, 2022). Specifically, Plaintiffs seek to enter portions of Ms. Guyger's

criminal trial court testimony where it is relevant to the current matter.

WHEREFORE, Plaintiffs, through their counsel of record, move this Honorable Court to

allow *in limine*, the statements made by Defendant Guyger in the preceding Criminal Trial that

are relevant to the claims of the Plaintiffs in the present Civil Trial.

## MOTION *IN LIMINE* NO. 7: To Admit Admitted Allegations of Complaints as Uncontested Facts

Plaintiffs respectfully move this Honorable Court *in limine* to admit allegations of

Plaintiff's Complaint and Amended Complaint as uncontested facts under Federal Rule of Civil

Procedure 8. In support of said motion, Plaintiffs state as follows:

On October 26, 2018, Plaintiffs filed their Complaint at Law in this matter. Plaintiffs'

Complaint at Law, ECF 1. On January 16, 2020, Defendant Amber Guyger, filed her Answer,

denying and admitting certain facts.  Defendant Guyger's Answer, ECF 48. Under Federal Rule

of Evidence 801(a), said admissions are considered statements of party opponent, and thus admissible as non-hearsay evidence. Fed. Rules Ev. 801. Accordingly, Plaintiffs seek to introduce, as uncontested facts, the following facts that were admitted in Defendant Amber Guyger's January 16, 2020 Answer:

- On September 6, 2018 at approximately 9:30 p.m., Defendant Guyger clocked out of her work shift at Dallas Police Department Headquarters located at 1400 Lamar Street Dallas, Texas 75215 after allegedly working a thirteen (13) hour patrol shift. At all relevant times, Defendant Guyger was in her departmental issued police uniform as she drove into the Southside Flats Apartment Complex (the "Southside") located at 1210 Lamar Street Dallas, TX 75215. ECF 48 at Para 12.

- At or about 9:41 p.m., Defendant Guyger entered the security gates of the Southside and allegedly parked her vehicle on the fourth floor of the parking garage. Defendant Guyger exited her vehicle and upon information and belief walked towards the fourth floor resident area of the Southside. ECF 48 at Para 13.

- Nevertheless, at approximately 9:53 p.m., Defendant Guyger arrived at apartment number 1478 where Jean was then present as the lawful inhabitant. ECF 48 at Para 13.

- After opening the door to Jean's apartment, Defendant Guyger stated in an interview with the Texas Rangers that she drew her service weapon and began issuing verbal commands to Jean, who was lawfully in his apartment. ECF 48 at Para 15.

- Guyger admits that she was aware she had struck Jean with at least one round from her service weapon and that she called 911 to report the shooting ECF 48 at Para 16.

- Jean was not in possession of a weapon at the time Officer Guyger fired at him. In fact, there was not a weapon in the sight of Officer Guyger when she fired her gun, fatally striking Jean. ECF 48 at Para 17.

- At no time did Officer Guyger call for cover prior to entering Jean's apartment. ECF 48 at Para 19.

- Defendant Guyger alleges she observed the apartment door ajar and believed a burglary to be taking place. Nevertheless, Defendant Guyger failed to secure the location by shutting the door and calling for back up while taking a tactical position outside of the apartment. ECF 48 at Para 20.

- Paramedics and additional law enforcement personnel arrived to the scene of the shooting sometime after Defendant Guyger fired the shots and found Jean still suffering from the gunshot wound inflicted by Defendant Guyger. Emergency Medical Technicians immediately began rendering aid to Jean and transferred him to a gurney where he was transported to an ambulance before being driven to a nearby hospital. ECF 48 at Para 21.

- Guyger admits that she was not placed under arrest, she placed phone calls, and she entered her apartment. ECF 48 at Para 22.

- Defendant Guyger has been a police officer for less than five years yet the shooting of Jean represents the second shooting of an unarmed suspect of color. ECF 48 at Para 26.

- Officer Guyger should have been well-trained to deal with unarmed citizens posing no threat of imminent bodily harm to her, other officers or the general public. Officer Guyger should have been well-trained how to deal with what is perceived to be an active crime scene and the need to secure cover before confronting the suspects. ECF 48 at Para 34.

- Defendant Guyger admits that she used deadly force. ECF 48 at Para 35.

On December 31, 2020, Plaintiffs filed their Amended Complaint at Law in this matter, ECF 76. On December 31, 2020, Plaintiffs' then counsel, Lee Merritt filed a Certificate of Service stating that he had sent said Amended Complaint to Defendant Guyger. ECF 76 at 30. As of today, Ms. Guyger has yet to file an Answer or Response to said Amended Complaint. On November 9, 2021, Plaintiffs filed their Second Amended Complaint, which was served on Amber Guyger. ECF 122. As of today, Ms. Guyger has yet to file an Answer or Response to the Second Amended Complaint.

Federal Rule of Civil Procedure 8(b)(6) describes the "Effect of Failing to Deny" as follows: "an allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." A defendant's failure to deny allegations of a complaint must be deemed admitted. *Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO, Loc. 295 v. Knouse Foods Co-op., Inc.,* 259 F. Supp. 592, 592 (M.D. Pa. 1966). *See Carmack v. Park Cities Healthcare, LLC*, 321 F. Supp. 3d 689, 706 (N.D. Tex. 2018) (assuming *arguendo* "because defendants did not file an answer denying plaintiffs' allegations, the allegations of the second amended complaint are deemed admitted under Rule 8(b)(6).") *See also Select Portfolio Servicing, Inc. v. Knowles*, No. 3:22-CV-00101-E, 2023 WL 2230411, at *5 (N.D. Tex. Feb. 24, 2023) (finding documents attached to Complaint admitted where no responsive pleading filed under FRCP 8(b)); *D'Costa v. Abacus FoodMart Inc.,* No. 4:21-CV-04031, 2023 WL 1094019, at *2–3 (S.D. Tex. Jan. 26, 2023), *report and*

*recommendation adopted,* No. 4:21-CV-04031, 2023 WL 2088424 (S.D. Tex. Feb. 13, 2023)

(deeming Complaint Allegations admitted where no responsive pleading was filed other than a

letter and appearance at the initial conference and entering a default where the factual allegations

in the complaint sufficiently stated a claim); *Hamilton v. Bluetower Mobile, LLC*, No. 4:16-CV-

3393, 2019 WL 1082715, at *2 (S.D. Tex. Mar. 7, 2019) (finding that because defendants failed

to respond to complaint or motion for summary judgment, all allegations other than those

relating to damages were deemed admitted under FRCP 8(b)). Accordingly, Plaintiffs seek to

introduce, as uncontested facts, the following facts contained in Plaintiffs' Amended Complaint

that were not responded to by Defendant Amber Guyger:

- Jean was killed as a direct result of Defendant Guyger's use of force that was clearly excessive and the excessiveness of which was clearly unreasonable. ECF 122 at Para 60.

- Defendant Guyger without justification and the need to do so, used excessive force as described above and killed Jean without legal justification. ECF 122 at Para 60.

- Defendant Guyger's use of force was clearly excessive and clearly unreasonable because Jean had been watching television in his own apartment, did not have a weapon, never made any threatening gestures toward Defendant Guyger, and did not pose an immediate threat—or any threat whatsoever—to the safety of Defendant Guyger or others. ECF 122 at Para 60.

- Defendant Guyger was not provoked when she fired twice into an occupied residence for no lawful or justifiable reason. ECF 122 at Para 61.

- Jean died as a result of a gunshot wound to his chest. ECF 122 at Para 61.

- The excessive and deadly force used by Defendant Guyger was not reasonable or justified, nor was it necessary under the circumstances. ECF 122 at Para 61.

- Defendant Guyger's actions were not objectively reasonable because Jean did not pose an immediate risk of serious physical harm to Guyger or any other person. ECF 122 at Para 62.

- The force used by Defendant Guyger was objectively unnecessary, excessive and unreasonable under the circumstances, as Jean did not pose an immediate threat to the safety of Defendant Guyger or others and the use of such excessive and deadly force was unnecessary. ECF 122 at Para 63.

- Defendant Guyger embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact, did cause Jean to suffer extreme and severe physical, mental and emotional distress, agony and anxiety. ECF 122 at Para 63.

- Defendant Guyger's conduct violated a clearly established constitutional right—the right to be free from excessive force—that was established well before Guyger shot and killed Mr. Jean. ECF 122 at Para 64.

- The right to be free from the use of excessive force was clearly established under the particular circumstances presented to Defendant Guyger. ECF 122 at Para 64.

- In Texas, it is well established that an off-duty officer can still be engaged in the lawful discharge of his duties as a Texas peace officer. ECF 122 at Para 31.

- Per DPD general orders, officers are considered on-duty 24/7. ECF 122 at Para 32.

- According to Dallas Police General Order 906.02(D), "Authorization to Use Deadly Force," "Officers will only use deadly force to protect themselves or another person from imminent death or serious bodily injury." ECF 122 at Para 123.

- General Order 906.02(E), "Drawing or Displaying Firearms," requires a threat or reasonable belief that there is a threat to life or that the officer have reasonable fear for their own safety and/or the safety of others, in order to authorize an officer to draw or display her/his firearm. ECF 122 at Para 123.

- DPD General Order 906.02(D) authorizes the use of deadly force by officers "to protect themselves or another person from imminent death or serious bodily injury." ECF 122 at Para 71.

- Defendant, Amber Guyger, was a police officer allegedly acting in the course and scope of her employment for the City of Dallas and DPD. ECF 122 at Para 8.

- It was Officer Guyger's duty and responsibility to treat all persons in compliance with constitutional and statutory requirements and in compliance with the DPD's rules, regulations, policies and procedures, customs and/or practices relating to the use of excessive and/or deadly force. ECF 122 at Para 8.

- DPD trains its officers to use deadly force even when there exists no immediate threat to themselves or others, training officers that if they cannot see a suspect's hands, it is reasonable to believe that the suspect is a deadly threat to the officer justifying the use of deadly force against the suspect. ECF 122 at Para 38.

- A reasonable officer in Defendant Guyger's position would have known that they, as sworn peace officers, had a duty under Texas law to prevent crime and arrest offenders, and would know that an off-duty police officer who observes a crime immediately becomes an on-duty officer, despite her unreasonable perception that a burglary was occurring. ECF 122 at Para 46.

- A reasonable officer in Defendant Guyger's position would have known that she was required to follow DPD best practices, including taking cover and waiting for backup before engaging what she allegedly believed was a burglary in progress. ECF 122 at Para 46.

- City of Dallas trains its officers on threat assessment and that threat assessment serves as the foundational analysis for the level of force which can be justified in interactions with suspects and the public in general. ECF 122 at Para 68.

- The City of Dallas trains its officers that if a suspect's hands are not visible, that suspect "is reaching for a weapon that is gonna be used against [the officers]." ECF 122 at Para 69.

- Officers are trained and instructed that if a suspect's hands are not visible during threat assessment, the suspect "is gonna kill [them]." ECF 122 at Para 70.

- DPD threat assessment training instructs officers that an individual whose hands cannot be seen is an immediate threat to the life and safety of the officer or others. ECF 122 at Para 118.

- The City's DPD threat assessment training on which Defendant Guyger testified that she relied during her interaction with Mr. Jean informed Defendant Guyger that Botham Jean was a lethal threat to her because she could not see Mr. Jean's hands and, pursuant to General Order 906.02(D), permitted and encouraged Defendant Guyger to therefore use deadly force in such a situation. ECF 122 at Para 80.

- At all relevant times, Defendant Guyger was a member of DPD's Crime Reduction Team ("CRT"). A specialized unit, CRT requires applicants to go through an application and interview process to earn a position on the team. Defendant Guyger's duties as a member of the CRT included assisting in the prevention of motor vehicle burglary, residential burglary, theft and other offenses. ECF 122 at Para 13.

- Per DPD Standard Operating Procedure 312, CRT members "are expected to exhibit the highest possible standards" of conduct, have "an extensive knowledge of search and seizure laws," and should "conduct themselves in a professional manner, treating both Citizens and suspects with dignity and respect." ECF 122 at Para 14

- After exiting her car and entering the complex Defendant Guyger would have been confronted immediately with two signs, one of the outside and the other on the inside of the complex entrance, both indicating she had arrived to "Level 4" of the complex. Defendant Guyger had to travel approximately one hundred fifty [150] yards from her car, passing approximately fifteen [15] fourth floor apartment doors, each bearing an illuminated apartment number and most displaying a unique floor mat, door marker or decoration of some kind. ECF 122 at Para 15

- For some unknown reason, Defendant Guyger disregarded the brightly colored red mat prominently displayed directly in front of Jean's door. Defendant Guyger also disregarded the eye level illuminated door number indicating she was standing at apartment 1478 and not hers. Defendant Guyger allegedly entered her electronic key fob into the keyhole of Jean's apartment. The door would have not produced the identical mechanical unlocking sound Defendant Guyger hears daily at her apartment, which would indicate to a reasonable police officer that she had entered her key into the wrong keyhole if that is indeed what happened. In fact, the light above the keyhole would have flashed red, indicating to Defendant Guyger that her key did not match the lock she was then attempting to access. Nevertheless, Defendant Guyger pushes the door open and entered Botham Jean's apartment. ECF 122 at Para 16.

- Together the available lighting provided sufficient illumination for Defendant Guyger to observe the layout, furniture, and decor of the apartment, as well as the features, clothing

and posture of Jean who was then unarmed, sitting on his couch, and not fully clothed as she conducted her visual inspection of the apartment. Despite all of this, Defendant Guyger unlawfully entered Jean's apartment and discovered Jean in a seated position on his sofa. ECF 122 at Para 17.

- Jean attempted to comply by slowly arising from his seated position. Without any lawful justification to do so and not asking the questions that a reasonable, well-trained officer would have to determine whether Jean was a threat and whether force or deadly force was immediately necessary, Defendant Guyger fired upon Jean, striking him in the upper chest near the heart although he was unarmed, in his own home, and not attempting to harm her or any other person. ECF 122 at Para 18.

- After shooting Jean in his own apartment, Defendant Guyger began shouting additional commands to Jean. Jean plead out desperately inquiring why Defendant Jean shot him. Aware that she had struck Jean with at least one round from her service weapon, Defendant Guyger called her attorney and 911 to report the shooting. In an attempt to cover-up for shooting Jean, Defendant Guyger allegedly made certain comments to Jean, who was then still suffering from the gunshot wound to his  chest and in a great deal of pain, while she knew or should have known she was being recorded by the 911 system. … Jean was allowed to remain on the ground, bleeding out, as he struggled to survive in extreme pain. ECF 122 at Para 18.

- Officer Guyger initiated and escalated the interaction with Jean to the point of excessive force. Officer Guyger unlawfully shot and killed Jean without any warning, although a reasonable officer in a similar position would have known that she was not in imminent danger and had less deadly alternatives available. ECF 122 at Para 21.

- Officer Guyger failed to conduct an objectively reasonable threat assessment in full light of the facts available to her when she chose to use deadly force without properly attempting to use de-escalation and less-lethal tactics to question or apprehend Jean before discharging her service weapon. ECF 122 at Para 22.

- Defendant Guyger testified that Defendant, the City of Dallas, trains its police officer that if they cannot see the hands of a suspect, the suspect is "reaching for a weapon that's gonna [sic] be used against us." ECF 122 at Para 23.

- Defendant Guyger further testified that she could not see Botham Jean's hands and therefore her training instructed her that he was going to kill her. ECF 122 at Para 24.

- Defendant Guyger stated that "[c]ause I couldn't see his hands, he was gonna kill me." ECF 122 at Para 25.

- Despite the fact that there were no visible signs of a forced entry on the door or doorframe outside the apartment. Defendant Guyger failed to exercise the most reasonable option available to her: secure the location by shutting the door and calling for back up while taking a tactical position outside of the apartment. Instead, Defendant Guyger entered the apartment with her gun drawn and followed her threat assessment training—looking for a suspect's hands—and DPD's "shoot first and ask questions later" custom and shot Mr. Jean in the chest. By simply following proper police procedures, and

the best police practices she was allegedly trained to follow, Defendant Guyger would have not shot Jean. ECF 122 at Para 26.

- Instead of rendering medical aid to Mr. Jean, who was bleeding out on the floor in front of her, Defendant Guyger walked around the apartment, the hallway outside, and texted her partner, DPD Officer Martin Rivera, that she "fucked up" and needed his help. ECF 122 at Para 27.

- Responding DPD officers immediately began rendering aid to Jean until Emergency Medical Technicians  arrived and transferred him to a stretcher where he was transported to an ambulance before being driven to a nearby hospital. Medical professionals continued to treat Jean after he arrived at the hospital; however, he eventually succumbed to his wounds. ECF 122 at Para 28.

- After additional law enforcement personnel responded to the scene of the shooting, Defendant Guyger was not placed under arrest but was instead allowed to continue to roam about the crime scene. Upon information and belief, as is the practice and custom of the DPD, Defendant Guyger was allowed to remain in possession of her phone, make several phone calls prior to giving a statement to investigators, and spoke with several officers before being isolated and having her statement taken. ECF 122 at Para 29.

- Chief Hall immediately and rightfully considered the incident an Officer Involved Shooting (OIS) as Defendant Guyger was in full uniform at the time of the shooting, was performing the duties of a law enforcement officer, was donning a badge, used her service weapon, and was behaving as a police officer when she shot Jean after issuing verbal commands to him in his home, but failed to arrest Defendant Guyger or charge her with a crime. ECF 122 at Para 30.

- The subsequent DPD homicide investigation, immediately initiated following the deadly shooting, was characterized by bias, partiality and a lack of thoroughness and/or professionalism, specifically designed to ratify the behavior and cover-up the misconduct of Defendant Guyger. Detectives sought warrants for the home of Jean with the specific intent of discovering evidence of illegality on the part of the decedent that could be used to justify the behavior of Defendant Guyger although it had nothing to do with Guyger's decision to shoot Jean. No warrants were initially sought for the apartment, motor vehicle and/or service locker of Defendant Guyger— locations that potentially held important evidence probative to the homicide investigation underway. ECF 122 at Para 33.

- Unidentified Dallas Police Officer sources immediately began anonymously providing information to local media outlets designed to cast the murder of Jean by Defendant Guyger in the best possible light. Sources offered that the emergency phone call by Defendant Guyger appeared sincere and substantiated the false narrative that the shooting was a reasonable accident to protect Guyger. Anonymous police sources offered to media that the physical evidence at the crime scene substantiated Defendant Guyger's version of events before conducting a thorough investigation. On the day of Jean's memorial, media published a warrant affidavit DPD investigators failed to seal indicating drugs and drug paraphernalia was recovered from the home of the decedent, all designed to protect Defendant Guyger. ECF 122 at Para 34.

- Although most of Defendant Guyger's social media and many text messages were erased in the immediate aftermath of the shooting, her Pinterest account—which was not fully deleted—demonstrates that she is a dangerous individual with highly violent and anti-social propensities. Defendant Guyger's posts include statements like "Personally I think I deserve a medal for getting through this week without stabbing someone in the neck with a fork"; "People are so ungrateful. No one ever thanks me for having the patience not to kill them"; "I wear all black to remind you not mess with me, because I'm already dressed for your funeral (saved to love to laugh with comment "yah I got meh a gun a shovel and gloves if I were u back da fuck up and get out of meh fucking ass."); "Stay low, go fast, kill first, die last, one shot, one kill, no luck, all skill" was saved to her quotes for inspiration. Such posts were available to the public and violated DPD's social media polices, however, Defendant Guyger was never reprimanded for the same. To the contrary, following the murder of Jean, Defendant Guyger was given time to scrub her social media accounts before her name was released to the public by the Dallas Police Department. The data deleted from Facebook, Twitter and Instagram represent active spoliation by Defendants Guyger and the City of Dallas. ECF 122 at Para 36.

- The DPD's written policy on use of force is not the de facto policy of the DPD. The de facto policy is that which Officer Guyger employed when she decided to enter Jean's apartment without proper cover and fired shots at Jean without warning and any attempt to de-escalate. ECF 122 at Para 37.

- Officer Guyger had a clear view of Jean; however, it is apparent that instead of using any sort of de-escalation techniques, she opted to use deadly force immediately. ECF 122 at Para 47.

- Officer Guyger opened Jean's apartment door and immediately drew her weapon without a reasonable threat assessment or evaluation of what occurred or what was transpiring. She simply opened fire without having any knowledge of the situation. Essentially, Officer Guyger was ill-trained, and as a result, defaulted to the defective DPD policy and custom: to use deadly force even when there exists no immediate threat of harm to themselves or others. ECF 122 at Para 48.

- There existed no justification whatsoever for Defendant Guyger's use of deadly force. Jean was in his own apartment and was not committing a penal offense. Jean was totally unaware of what was transpiring when Officer Guyger fired the deadly shots. Jean was not attempting to harm anyone, nor did he appear menacing, threatening, or dangerous in any manner. ECF 122 at Para 49.

- There is no credible evidence whatsoever that Officer Guyger or anyone else was in imminent danger that would indicate that the use of deadly force was justified. ECF 122 at Para 50.

- At all times material hereto, Officer Guyger was acting in the scope of her employment as agent, servant, and employee of the DPD, a part of Defendant, the City of Dallas, within its executive branch and was performing a governmental function. ECF 122 at Para 52.

- Moreover, no reasonably competent officer would have concluded that Officer Guyger's actions described herein would not, and did not, violate Jean's constitutional rights. In

other words, no reasonably prudent police officer under similar circumstances could have believed that Officer Guyger's shooting of Mr. Jeanwas justified. ECF 122 at Para 53.

- Yet Mr. Jean had nothing in his hands, was not concealing his hands, was in his own apartment, and was neither a threat nor threatening the safety of Defendant Guyger at the moment Defendant Guyger shot him. ECF 122 at Para 81.

- In fact, at no point in his interaction with Defendant Guyger did Jean have anything in his hands. Indeed, Mr. Jean's kitchen counter was between Defendant Guyger and Mr. Jean when Defendant Guyger shot him. ECF 122 at Para 82.

- Similarly, Jean did not have pockets in the shorts he was wearing, and could not have had a concealed weapon on his person with which to threaten Defendant Guyger's safety. ECF 122 at Para 83.

- Defendant Guyger nevertheless shot Mr. Jean center mass, through the upper chest, simply because, in her words, she "couldn't see his hands." Defendant Guyger's actions comported directly with DPD's written authorization for the use of deadly force policy and the threat assessment training received by DPD officers. ECF 122 at Para 84.

- As noted above, Officer Guyger used excessive and deadly force for no lawful reason when she shot Jean without any warnings and for no lawful reason. ECF 122 at Para 115.

- There is no evidence that Officer Guyger and any other person were in imminent danger or in fear of serious bodily injury. There were no signs of any danger that would indicate or suggest that the use of deadly force was justified. ECF 122 at Para 116.

- There is no indication that Officer Guyger attempted to use her intermediate weapon or de-escalation training before resorting to the use of deadly force. Pursuant to General Order 901.04(D)(3) a Taser, which Defendant Guyger had on her duty belt for the entirety of her interaction with Mr. Jean, is an intermediate weapon and is justified for situations in which the officer believes empty hand control will be ineffective. ECF 122 at Para 119.

- At the time Officer Guyger drew her firearm, Jean had not done anything to justify Officer Guyger's decision to use deadly force. Jean was unarmed and lawfully in his own apartment at the time he was shot and had not placed Officer Guyger or any other person in fear of imminent death or seriously bodily injury. Officer Guyger merely "couldn't see" Mr. Jean's hands and, per her DPD training, assessed this fact as a sufficient threat to justify the immediate use of deadly force. ECF 122 at Para 120.

- The drawing of an Officer's weapon inherently assumes that the use of force will cause death or serious bodily injury to the suspect and is to be applied under very narrowly defined circumstances. ECF 122 at Para 121.

WHEREFORE, Plaintiffs move this Honorable Court *in limine* to admit allegations of

Plaintiff's Complaint and Amended Complaint as uncontested facts under Federal Rule of Civil

Procedure 8.

## MOTION *IN LIMINE* NO. 8: To Admit the Evidence of the Murder Criminal Conviction of Defendant Guyger and the Elements of Murder.

Plaintiffs move the Court *in limine* to admit or take judicial notice at trial of Defendant Guyger's criminal conviction for murdering Mr. Jean. In support of said motion, Plaintiffs state as follows:

Defendant Guyer was convicted of murder for shooting and killing Mr. Jean. This civil case arises from the precise same facts that gave rise to that criminal conviction—Defendant's unlawful shooting and killing of Mr. Jean. Plaintiffs seek to admit the facts of Defendant's criminal conviction to prove their civil claims against Defendant. The Court should permit Plaintiff to do so.

It is a bedrock legal principle that the operative facts necessary for criminal convictions are admissible as conclusive facts in civil suits arising from the same events and circumstances. *See, e.g.*, *United States v. Thomas*, 709 F.2d 968, 972 (5th Cir.1983) ("[A criminal] conviction is conclusive as to an issue arising against the criminal defendant in a subsequent civil action."); *Hardin v. Aetna Casualty & Surety Co.*, 384 F.2d 718 (5th Cir.1967) (conviction for transportation of stolen moneys was conclusive proof of claimant's inability to collect burglary insurance in subsequent civil proceeding); *Howard v. I.N.S.*, 930 F.2d 432 (5th Cir.1991) (finding in criminal case triggers doctrine of collateral estoppel in later deportation proceedings).

There is a straightforward test for establishing the application of this doctrine in a case such as this one. As one court in this Circuit put it,

> To apply collateral estoppel [of a criminal conviction] offensively, the plaintiff must show that four conditions are met: "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine.

*Mitchell v. City of New Orleans*, No. CV 06-4021, 2016 WL 3127168, at *4 (E.D. La. June 3, 2016) (quoting *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998)). Each of those elements is satisfied here.

> ***First***, the issues in Defendant's criminal case are identical to the elements of Plaintiff's Fourth Amendment claims in this one.  Defendant was convicted under TEX. PEN. CODE § 19.02. Which provides in relevant part that a person commits murder if she (1) intentionally or knowingly causes the death of an individual; [or]
>
> (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual . . . .

*See Renee Guyger v. State of Texas*,  No. 05-19-01236-CR, 2021 WL 5356043, at *3 (Tex. App. Nov. 17, 2021) (recounting elements of Defendant's criminal conviction and upholding same).  As an affirmative defense at trial Defendant asserted as an affirmative defense that she had committed the killing as a result of a mistake of fact and thus that her killing of Mr. Jean was reasonable, on grounds that she "reasonably believed that deadly force, when and to the degree used ... was immediately necessary to protect [herself] against the use or attempted use of unlawful deadly force by [Mr.] Jean," *id.* at *6 (internal quotation omitted), but Defendant's jury rejected this defense, and the Court of Appeals upheld that rejection, upholding her conviction.  *Id.* at *7.

The elements of Defendant's murder conviction closely mirror the Fourth Amendment's prohibition of excessive force, which provides that a government official violates the Fourth Amendment's prohibition against Excessive Force when they use unreasonable force against the plaintiff.  *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985).

***Second***, Defendant had ample opportunity to fully and vigorously litigate the murder charges against her, fighting them at trial in the 204th Judicial Distrct Court, in Dallas County

Texas (Trial Court Cause No. F18-00737-Q) and on appeal up to a petition for certiorari before the United States Supreme Court.  *See Guyger v. Texas*, 143 S.Ct. 407 (Nov. 7, 2022) (denying cert).

*Third*, for the reasons set forth with respect to the first element, Defendant's the elements of Defendant's murder conviction—and the rejection of her defense of reasonable mistake—were necessary to support her murder conviction.

*Fourth* and finally, there are no special circumstances that would make it unfair to introduce Defendant's murder conviction.  The conviction was fairly obtained and it comprises the precise same facts as the current civil case.

Finally, taking judicial notice of Defendant's criminal conviction is entirely appropriate as a general matter, as it is the appropriate means of introducing the conviction at trial.  *See, e.g.*, *Grant v. CRST Expedited, Inc.*, No. 1:18-CV-433, 2021 WL 2099314, at *5 (E.D. Tex. Mar. 23, 2021) (in civil case, taking judicial notice of prior criminal conviction) *United States v. Saylor*, 626 F. App'x 802, 805 (11th Cir. 2015) (affirming the trial court's taking of judicial notice of the fact that the defendant was convicted of a felony); *Mosby v. O'Brie*, 532 F. App'x 84, 85 (3d Cir. 2013) (taking judicial notice of the resolution to a criminal case); *Gov't of V.I. v. Testamark*, 528 F.2d 742, 743 (3d Cir. 1976) (finding no error by the trial court for taking judicial notice of the defendant's prior conviction to place the conviction before the jury for impeachment purposes); *United States v. Contreras*, No. CR 05-1150 MCA, 2006 WL 8443821, at *2 (D.N.M. Aug. 15, 2006) (explaining that courts have suggested that judicial notice is an "appropriate mechanism" for introducing evidence of prior convictions because they are "capable of accurate and ready determination by resort to court records, the accuracy of which cannot reasonably be questioned").

WHEREFORE, Plaintiffs move this Honorable Court *in limine* to admit Defendant Guyger's proceeding criminal conviction for taking the life of Mr. Jean at trial in this case.

Respectfully submitted,
By:*/s/ Bhavani Raveendran*

Daryl K. Washington, Esq. State Bar No. 24013714
WASHINGTON LAW FIRM, PLLC
325 N. St. Paul St., Suite 3950
Dallas, Texas 75201
dwashington@dwashlawfirm.com

Bhavani Raveendran *(pro hac vice)* (IL Bar No. 6309968)
ROMANUCCI & BLANDIN, LLC
321 N. Clark Street, Suite 900
Chicago, Illinois 60654
b.raveendran@rblaw.net

Brooke Cluse
Gabrielle Higgins (*pro hac vice* pending)
BEN CRUMP LAW PLLC
5 Cowboys Way, Suite 300
Frisco, Texas 75034
brooke@bencrump.com
gabrielle@bencrump.com

***ATTORNEYS FOR PLAINTIFFS***

## Certificate of Service

I hereby certify that on October 28, 2024, a copy of the foregoing document was mailed via mail to Defendant Amber Guyger at the following address:

Amber Guyger, Pro Se Defendant
#02283505
TDCJ Patrick O'Daniel Unit
Unit Law Library
2305 Ransom Road
Gatesville, TX 76528-2962